IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DANIEL EMERSON NORTON, #90201-053,<br><br>        Plaintiff,<br><br>    v.<br><br>ESTELLA DERR, *et al.*,<br><br>        Defendants. | Civil No. 22-00109 LEK-RT<br><br>ORDER DISMISSING COMPLAINT, ECF NO. 1, WITH PARTIAL LEAVE TO AMEND, AND DENYING MOTION FOR RECONSIDERATION OF COURT'S ORDER DENYING PLAINTIFF'S MOTION TO REQUEST AN EMERGENCY HEARING, ECF NO. 14 |

## ORDER DISMISSING COMPLAINT, ECF NO. 1, WITH PARTIAL LEAVE TO AMEND, AND DENYING MOTION FOR RECONSIDERATION OF COURT'S ORDER DENYING PLAINTIFF'S MOTION TO REQUEST AN EMERGENCY HEARING, ECF NO. 14

Before the Court is a Prisoner Civil Rights Complaint ("Complaint"), ECF No. 1, filed by pro se Plaintiff Daniel Emerson Norton ("Norton")[1] pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971). Also before the Court is Norton's Motion for Reconsideration of Court's Order Denying Plaintiff's Motion to Request an Emergency Hearing ("Motion"), ECF No. 14.

---

[1] Norton is currently incarcerated at the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu"). *See* ECF No. 1 at 1; Federal Bureau of Prisons ("BOP"), https://www.bop.gov/inmateloc/ (select "Find By Number," enter "90201-053" in "Number" field, and select "Search") (last visited May 12, 2022).

Norton alleges in the Complaint that three FDC Honolulu officials[2] violated the Eighth Amendment's prohibition on cruel and unusual punishment by threatening his safety (Count I) and denying him adequate medical care (Count II). ECF No. 1 at 5–8.  He further alleges that prison officials denied him access to the court and retaliated against him (Count III).  *Id.* at 9–10.  For the following reasons, the Complaint, ECF No. 1, is DISMISSED for failure to state a claim for relief, but with partial leave granted to amend.  *See* 28 U.S.C. §§ 1915(e)(2) & 1915A(b)(1).  If Norton wants this action to proceed, he must file an amended pleading that cures the noted deficiencies in his claims on or before **June 13, 2022**. In the alternative, Norton may voluntarily dismiss this action pursuant to Federal Rule of Civil Procedure 41(a)(1).  Norton's Motion, ECF No. 14, is DENIED without prejudice.

## I.  <u>STATUTORY SCREENING</u>

The Court is required to screen all in forma pauperis prisoner pleadings against government officials pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(a). *See Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).  Claims or complaints that are frivolous, malicious, fail to state a claim for relief, or seek damages from defendants who are immune from suit must be dismissed.  *See*

---

[2] Norton names as Defendants Warden Estella Derr ("Warden Derr"), Head Doctor Kwon ("Dr. Kwon"), and Unit Manager Robl ("Robl") in both their individual and official capacities.  ECF No. 1 at 1–2.

2

*Lopez v. Smith*, 203 F.3d 1122, 1126–27 (9th Cir. 2000) (en banc); *Rhodes v. Robinson*, 621 F.3d 1002, 1004 (9th Cir. 2010).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A(a) involves the same standard of review as that used under Federal Rule of Civil Procedure 12(b)(6). *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam). Under this standard, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct. *See id.*

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor. *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010) (citations omitted). The Court must grant leave to amend if it appears the plaintiff can correct the defects in the complaint. *See Lopez*, 203 F.3d at 1130. When a claim cannot be saved by amendment, dismissal with prejudice is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

## II.  **BACKGROUND**[3]

Norton commenced this action by signing the Complaint on March 9, 2022. ECF No. 1 at 11.  Norton alleges in Count I of the Complaint that Warden Derr and Unit Manager Robl threatened his safety by housing him in "unit 5A."  *Id.* at 5. The inmates housed in unit A include members of various gangs, "non-US citizens," and "pre-sentenced individuals."  *Id.* at 5–6.  Unit 5A also houses at least one inmate who has attacked other inmates and prison staff in the past.  *Id.* at 6.

According to Norton, there was a "major gang riot" involving more than thirty-five inmates in unit 5A on July 12, 2021.  *Id.* at 5.  Most of the inmates involved in the riot continue to be housed in unit 5A.  *Id.* at 6.  Norton describes himself as a "minimum security, camp level, 'Out Custody' inmate."  *Id.* at 5.  He moved into unit 5A on February 14, 2022.  *Id.*

Norton alleges in Count II that Dr. Kwon and Robl denied him adequate medical care.  *Id.* at 7–8.  Norton was diagnosed with an "arachnoid cyst on his brain" while he was incarcerated at the Federal Correctional Institution in Morgantown, West Virginia, before he was moved to FDC Honolulu.[4]  *Id.* at 7. After arriving at FDC Honolulu on January 18, 2022, Norton met with Dr. Kwon

---

[3] Norton's factual allegations are accepted as true for purposes of screening.  *See Nordstrom v. Ryan*, 762 F.3d 903, 908 (9th Cir. 2014).

[4] Norton filed a complaint in the Northern District of West Virginia based on the medical care he received at FCI Martinsburg.  *See Norton v. Bowers*, No. 3:21-cv-00088-GMG-RWT (N.D.W.V.).  That case is pending.

the next day. *Id.* Dr. Kwon assured Norton that he would be seen by a neurologist. *Id.* At some point, Dr. Kwon allegedly "deprived" Norton for eleven days of anti-seizure medication for the cyst. *Id.* at 8.

Norton further alleges that he "filed a series of Administrative Remedies from late January through March without a response until March 1, 2022," from Robl. *Id.* According to Norton, Robl confirmed the cyst and Norton's need for his medication but stated that a consultation was "not possible due to a lack of information." *Id.* Norton continues to experience headaches, nausea, and dizziness. *Id.* at 7.

Norton alleges in Count III that prison officials denied him access to the court and retaliated against him. *Id.* at 9–10. According to Norton, he has been denied medication, administrative remedies, access to the law library, and his use of the copier has been limited. *Id.* at 10. Norton attributes these events to the fact that he has "help[ed] inmates at FDC Honolulu" secure pillows and medical care, and to "clarify First Step Act eligibility." *Id.*

Norton seeks: (1) $5,000; (2) an "Order requiring medical evaluation for arachnoid cyst"; (3) "[s]egregation of inmates per Bureau of Prisons policy or transfer [Norton to] a facility based on his security level; and (4) "Protective order against retaliation from the FDC Honolulu staff." *Id.* at 11.

5

On April 13, 2022, the Court received a Motion to Request an Emergency

Hearing from Norton.  ECF No. 8.  The Court denied the request without prejudice

on April 13, 2022, because Norton had not yet paid the filing fee or been granted in

forma pauperis status.  ECF No. 9.  The Court granted Norton's Application to

Proceed In Forma Pauperis by a Prisoner, ECF No. 11, on April 27, 2022, ECF No.

13, and received Norton's Motion for Reconsideration of Court's Order Denying

Plaintiff's Motion to Request an Emergency Hearing on May 9, 2022, ECF No. 14.

### III.  DISCUSSION

#### A.  Legal Framework for Bivens Claims

In *Bivens*, the Supreme Court "recognized for the first time an implied right

of action for damages against federal officers alleged to have violated a citizen's

constitutional rights."  *Hernandez v. Mesa*, 582 U.S. ___, 137 S. Ct. 2003, 2006

(2017) (per curiam) (internal quotation marks and citation omitted).  *Bivens*

involved a suit against individual federal agents who violated the Fourth

Amendment's prohibition against unreasonable searches and seizures.  *See Bivens*,

403 U.S. at 389–90.  Since *Bivens*, the Supreme Court has expanded this implied

cause of action only twice.  *See Ziglar v. Abbasi*, 582 U.S. ___, 137 S. Ct. 1843,

1855 (2017) ("These three cases — *Bivens*, *Davis*, and *Carlson* — represent the

only instances in which the Court has approved of an implied damages remedy

under the Constitution itself."); *Davis v. Passman*, 442 U.S. 228 (1979) (suit under

the Fifth Amendment's Due Process Clause for gender discrimination by a United States Congressman); *Carlson v. Green*, 446 U.S. 14 (1980) (suit under the Eighth Amendment's Cruel and Unusual Punishment Clause for failure to provide adequate medical treatment by federal prison officials).

The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 582 U.S. at ___, 137 S. Ct. at 1857 (quoting *Iqbal*, 556 U.S. at 675). "This is in accord with the Court's observation that it has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'"[5] *Id.* (quoting *Malesko*, 534 U.S. at 68). Indeed, the Court has suggested that "the analysis in [its] three *Bivens* cases might have been different if they were decided today." *Id.* at ___, 137 S. Ct. at 1856.

In deciding whether a *Bivens* remedy is available, courts first consider whether providing such a remedy is precluded by prior cases in which the Supreme Court or the Ninth Circuit has declined to recognize an implied right of action. *See*

_____

[5] The Supreme Court declined to create a *Bivens* remedy in the following cases: a First Amendment suit against a federal employer, *see Bush v. Lucas*, 462 U.S. 367 (1983); a race discrimination suit against military officers, *see Chappell v. Wallace*, 462 U.S. 296 (1983); a substantive due process suit against military officers, *see United States v. Stanley*, 483 U.S. 669 (1987); a procedural due process suit against Social Security officials, *see Schweiker v. Chilicky*, 487 U.S. 412 (1988); a procedural due process suit against a federal agency for wrongful termination, *see FDIC v. Meyer*, 510 U.S. 471 (1994); an Eighth Amendment suit against a private halfway house operator under contract with the BOP, *see Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001); a claim of retaliation by Bureau of Land Management officials against plaintiff for his exercise of Fifth Amendment property rights, *see Wilkie v. Robbins*, 551 U.S. 537 (2007); an Eighth Amendment suit against prison guards at a private prison, *see Minneci v. Pollard*, 565 U.S. 118 (2012); and a Fifth Amendment suit against Department of Justice officials, *see Abbasi*, 582 U.S. ___, 137 S. Ct. 1843.

7

*Lanuza v. Love*, 899 F.3d 1019, 1025 (9th Cir. 2018).  If a claim is precluded, that is the end of the matter.  If a claim is not precluded, courts then apply a two-step test.

At step one, courts determine whether a plaintiff is seeking a *Bivens* remedy in a new context.  *See Ioane v. Hodges*, 939 F.3d 945, 951 (9th Cir. 2018).  The context is new "[i]f the case is different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]."  *Abbasi*, 582 U.S. at ___, 137 S. Ct. at 1859.  If the plaintiff is seeking a *Bivens* remedy in a new context, then courts proceed to the second step.

At step two, courts may extend *Bivens* only if two conditions are met.  "First, the plaintiff must not have any other adequate alternative remedy."  *Ioane*, 939 F.3d at 951 (internal quotation marks and citation omitted).  "Second, there cannot be any 'special factors' that lead the court to believe that Congress, instead of the courts, should be the one to authorize a suit for money damages."  *Id.* at 951–52 (some internal quotation marks, brackets, and citation omitted).  Although the Supreme Court has yet to define the term, "special factors," it has explained that "the inquiry must concentrate on whether the Judiciary is well suited, absent congressional action or instruction, to consider and weigh the costs and benefits of allowing a damages action to proceed."  *Abbasi*, 582 U.S. at ___, 137 S. Ct. at 1857–58.

## B. Official Capacity Claims Under *Bivens*

Norton names Warden Derr, Unit Manager Robl, and Dr. Kwon in both their individual and official capacities.  ECF No. 1 at 1–3.

"A *Bivens* action can be maintained against a defendant in his or her individual capacity only, and not in his or her official capacity." *Consejo de Desarrollo Economico de Mexicali, A.C. v. United States*, 482 F.3d 1157, 1173 (9th Cir. 2007) (internal quotation marks, brackets, and citation omitted).  "This is because a Bivens suit against a defendant in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity."  *Id.* (citation omitted). Thus, "[t]here is no such animal as a *Bivens* suit against a public official tortfeasor in his or her official capacity." *Solida v. McKelvey*, 820 F.3d 1090, 1094 (9th Cir. 2016) (internal quotation marks and citation omitted).

Any *Bivens* claims against Warden Derr, Robl, and Dr. Kwon in their official capacities are therefore DISMISSED with prejudice.

## C. Supervisory Liability Under *Bivens*

Norton names as Defendants various supervisory officials, including the warden, a unit manager, and the head doctor at FDC Honolulu.  ECF No. 1 at 1–2.

"In the limited settings where *Bivens* does apply, . . . Government officials may not be held liable for the unconstitutional conduct of their subordinates under

9

a theory of *respondeat superior*."  *Iqbal*, 556 U.S. at 676 (citations omitted).  This

is because "[t]he purpose of *Bivens* is to deter the *officer*."  *Abbasi*, 137 S. Ct. at

1860 (internal quotation marks and citation omitted).  "*Bivens* is not designed to

hold officers responsible for acts of their subordinates."  *Id.* (citation omitted).

 A *Bivens* claim must be "brought against the individual official for his or her

own acts, not the acts of others."  *Id.*; *see also Jones v. McFadden*, No. 1:09–cv–

00957–DLB (PC), 2010 WL 2196849, at *3 (E.D. Cal. May 28, 2010) ("[W]hen a

named defendant holds a supervisorial position, the causal link between him and

the claimed constitutional violation must be specifically alleged." (citations

omitted)).  Thus, to state a claim for relief under *Bivens* based on a theory of

supervisory liability, the plaintiff must allege facts showing that supervisory

defendants:

> (1) personally participated in the alleged deprivation of constitutional rights;
> (2) knew of the violations and failed to act to prevent them; or (3)
> promulgated or implemented a policy so deficient that the policy itself is a
> repudiation of constitutional rights and is the moving force of the
> constitutional violation.

*Id.* (quoting *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989)) (internal

quotation marks and other citation omitted).

 Any allegation by Norton that these three supervisory prison officials are

liable purely because of the acts of those under their supervision must be

dismissed.  *See Fries v. Kernan*, Case No. 1:18-cv-00652-LJO-SKO (PC), 2018

WL 11260954, at *8 (E.D. Cal. Dec. 5, 2018) ("[A]ny allegation that supervisory personnel . . . are somehow liable solely based on the acts of those under his or her supervision, does not state a cognizable claim.").   For any claims against Defendants to proceed, Norton must plausibly allege that Warden Derr, Robl, or Dr. Kwon violated his rights through their own actions.  *See Chavez v. United States*, 683 F.3d 1102, 1109 (9th Cir. 2012) ("*Bivens* claims cannot proceed on a theory of *respondeat superior*, but must instead plead that a supervisor, by her 'own individual actions,' violated the Constitution." (citation omitted)).

**D.  Eighth Amendment**

The Eighth Amendment governs the treatment of convicted prisoners and forbids "cruel and unusual punishments."  U.S. Const. amend. VIII; *see Sandoval v. Cnty. of San Diego*, 985 F.3d 657, 667 (9th Cir. 2021).  Although the Constitution "'does not mandate comfortable prisons,'" it does not "permit inhumane ones[.]"  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citation omitted).  Prison officials, therefore, may not use excessive physical force against prisoners, they "must ensure that inmates receive adequate food, clothing, shelter, and medical care, and [they] must 'take reasonable measures to guarantee the safety of the inmates[.]'"  *Id.* (citations omitted).

11

### 1.  Threat to Safety

Norton alleges in Count I that Warden Derr and Unit Manager Robl threatened his safety by housing him in unit 5A.  ECF No. 1 at 5–6.

The Supreme Court has not explicitly held that a *Bivens* remedy is available under the Eighth Amendment for a threat to safety claim.  The Ninth Circuit, however, has allowed a *Bivens* claim under the Eighth Amendment for a federal prison official's deliberate indifference to prisoner safety.  *See Doreh v. Rodriguez*, 723 F. App'x 530, 530 (9th Cir. 2018) ("[T]hese allegations are sufficient to state a deliberate indifference to safety claim." (citation omitted)).  Several district courts have also recognized failure to protect claims under *Bivens*.  *See McDaniels v. United States*, No. 5:14-cv-02594-VBF-JDE, 2018 WL 7501292, at *5–6 (C.D. Cal. Dec. 28, 2018), *report and recommendation adopted*, 2019 WL 1045132 (C.D. Cal. Mar. 5, 2019); *Lee v. Matevousian*, No. 1:18-cv-00169-GSA-PC, 2018 WL 5603593, at *7–8 (E.D. Cal. Oct. 26, 2018) (concluding that a failure to protect claim was not a *Bivens* expansion); *Marquez v. United States*, Case No.: 3:18-cv-0434-CAB-NLS, 2018 WL 1942418, at *4 (S.D. Cal. Apr. 25, 2018).

Even assuming the existence of a *Bivens* remedy for a failure to protect claim, Norton fails to state a plausible claim.  *See Hernandez*, 582 U.S. at ___, 137 S. Ct. at 2007 ("[D]isposing of a *Bivens* claim by resolving the constitutional question, while assuming the existence of a *Bivens* remedy — is appropriate in

12

many cases."); *Ansari v. Martinez*, 859 F. App'x 842, 842 (9th Cir. 2021) ("The district court properly dismissed [the plaintiff's] Eighth Amendment claims because, even if a *Bivens* remedy is available for these claims, [the plaintiff] failed to allege facts sufficient to state a plausible claim." (citations omitted)).

The Eighth Amendment imposes on prison officials a duty to "take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (internal quotation marks and citation omitted). Prison officials, therefore, "have a duty to protect prisoners from violence at the hands of other prisoners." *Id.* at 833 (internal quotation marks, alteration, and citation omitted).

A prison official violates the Eighth Amendment, however, only when two requirements are met. "First, the deprivation alleged must be objectively, sufficiently serious." *Id.* at 834 (citations omitted). "For a claim . . . based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* (citation and footnote omitted). Second, the plaintiff must show deliberate indifference — that is, that "the [prison] official kn[ew] of and disregard[ed] an excessive risk to inmate . . . safety." *Id.* at 837. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

13

Here, Norton has not plausibly alleged that he faced a "substantial risk of serious harm." *Farmer*, 511 U.S. at 834. To the extent Norton notes that members of different gangs are housed together in unit 5A, this does not necessarily amount to an Eighth Amendment violation. *See Labatad v. Corr. Corp. of Am.*, 714 F.3d 1155, 1160 (9th Cir. 2013) ("[A]mong other problems, '[t]he number of gang members housed . . . and the high representation of certain gangs would place an unmanageable burden on prison administrators were they required to separate inmates by gangs.'" (quoting *Mayoral v. Sheahan*, 245 F.3d 934, 939 (7th Cir. 2001) (second alteration in original)); *Wilson v. Pierce County*, Case No. 16-5455 RJB, 2017 WL 3876625 (W.D. Wash. Sept. 5, 2017) ("The Ninth Circuit has held that a jail's policy of housing rival gang members together does not amount to a per se violation of the Eighth Amendment."). Likewise, the fact that Norton is housed with an inmate who may have committed violent acts in the past, without more, does not necessarily create a "substantial risk of serious harm." *See Hudson v. Palmer*, 468 U.S. 517, 526 (1984) ("Prisons, by definition, are places of involuntary confinement of persons who have a demonstrated proclivity for antisocial criminal, and often violent, conduct."); *see also Belvins v. San Bernardino Cnty. Sheriff's Dep't*, Case No. 5:19-cv-01247-MWF (AFM), 2019 WL 3255161, at *7 (C.D. Cal. July 19, 2019) ("[T]he mere fact that a new cellmate had engaged in violent behavior at some time in the past does not show that the

14

cellmate posed an objectively serious risk to plaintiff if celled together." (citing *id.*)).  To the extent Norton's claim is based on a "major gang riot" on July 12, 2021, the Court notes that the riot occurred six months before Norton moved into unit 5A on February 14, 2022.  He does not allege that there have been any similar issues since then.  Indeed, Norton does not allege that anyone has harmed him, attempted to harm him, or even threatened to do so since he arrived at FDC Honolulu.  Norton therefore fails to allege a substantial risk of serious harm.

In addition, Norton has not plausibly alleged that any Defendant acted with deliberate indifference to his safety.  *See Farmer*, 511 U.S. at 834.  Norton does not allege that he ever complained to Warden Derr or Unit Manager Robl about his placement in unit 5A.  Nor does he allege that anyone has complained to Warden Derr or Robl about the composition of the inmate population in unit 5A. In short, Norton has not plausibly alleged that Warden Derr or Robl knew of and disregarded an excessive risk to his safety.  *See M.G. v. United States*, 603 F. App'x 616, 617 (9th Cir. 2015) ("To plead deliberate indifference, [the plaintiff] must allege nonconclusory facts from which we can infer defendants . . . actually knew of the danger [the plaintiff] faced.").  Count I is therefore DISMISSED with leave to amend.

## 2.  Adequate Medical Care

Norton alleges in Count II that Dr. Kwon and Unit Manager Robl denied him adequate medical care.  ECF No. 1 at 7–8.

As already noted, "*Carlson* recognized an implied claim under the Eighth Amendment's cruel and unusual punishment clause for prison officials' failure to provide adequate medical care[.]" *Hoffman v. Preston*, 26 F.4th 1059, 1064 (9th Cir. 2022) (citation omitted).  "To establish a claim of inadequate medical care, a prisoner must first show a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Edmo v. Corizon, Inc.*, 935 F.3d 757, 785 (9th Cir. 2019) (per curiam) (internal quotation marks omitted).  "If . . . a prisoner establishes a sufficiently serious medical need, that prisoner must then show the official's response to the need was deliberately indifferent." *Id.* at 786 (internal quotation marks and brackets omitted).  "To show deliberate indifference, the plaintiff must show that the course of treatment the official chose was medically unacceptable under the circumstances and that the official chose this course in conscious disregard of an excessive risk to the plaintiff's health." *Id.* (internal quotation marks and brackets omitted).  "Deliberate indifference is a 'high legal standard' beyond malpractice or gross negligence." *Balla v. Idaho*, 29 F.4th 1019, 1025–26 (9th Cir. 2022) (citation omitted).

16

Even if Norton had a serious medical need, *see Lindley v. Corizon Health*,
No. CV 18-01860-PHX-DGC (JFM), 2020 WL 1812039 (D. Ariz. Apr. 9, 2020)
(concluding that arachnoid cyst met the serious medical need prong), he has not
plausibly alleged that Dr. Kwon or Robl acted with deliberate indifference to that
need.

### a. Dr. Kwon

Norton acknowledges that Dr. Kwon met with him the day after he arrived at
FDC Honolulu.  ECF No. 1 at 7.  Norton further acknowledges that Dr. Kwon
assured him that he would be seen by neurologist.  *Id.*  It is unclear, however, if
Norton has been seen by a neurologist.  Although Norton alleges that he has no
"further" medical appointments or procedures scheduled, he does not say if he was
ever seen by a neurologist.  If Norton has not been seen by a neurologist, nothing
suggests that Dr. Kwon is aware of this fact.  Indeed, Norton does not allege that
he has had any interactions with Dr. Kwon since January 19, 2022.  Although
Norton states that he sent an email to Dr. Kwon, it is unclear if Dr. Kwon ever
received the email.

To the extent Norton also alleges that Dr. Kwon "deprived" him of anti-
seizure medication for eleven days, he does not say when this allegedly occurred.
It is also unclear if Norton is alleging that it took eleven days for him to receive
medication that Dr. Kwon had prescribed or that Dr. Kwon took away medicine

that Norton had already been taking.  If it is the latter, Norton does not say what

reason, if any, Dr. Kwon provided for doing so.  Without more, Norton has failed

to allege deliberate indifference by Dr. Kwon.

### b.  Unit Manager Robl

According to Norton, he submitted "a series of Administrative Remedies

from late January though March."  *Id.* at 8.  Norton fails to say, however, what he

said in his grievances and who he gave them to.  According to Norton, Robl issued

at least one response on March 1, 2022, confirming the cyst and Norton's need for

medication, but stating that a consultation was impossible without additional

information.  *Id.*  Norton does not say, however, what additional information Robl

required.  Norton also does not allege that he ever provided the necessary

information to Robl.  To the extent Norton states that he filed an additional

Administrative Remedy on March 4, 2022, and that he received an

acknowledgment on March 9, 2022, but he does not say what he wrote on his

grievance form, who he submitted to, or what was said in the response.  Norton has

not plausibly alleged that Robl acted with deliberate indifference.

Norton's medical care claims against Dr. Kwon and Robl are therefore

DISMISSED with leave granted to amend.

## E.  First Amendment

Norton alleges in Count III that unidentified officials at FDC Honolulu denied him access to the court and retaliated against him.[6]  ECF No. 1 at 10.

"The First Amendment guarantees a prisoner a right to seek redress of grievances from prison authorities and . . . a right of meaningful access to the courts." *Jones v. Williams*, 791 F.3d 1023, 1035 (9th Cir. 2015) (citations omitted).  "And because purely retaliatory actions taken against a prisoner for [filing prison grievances or pursuing civil rights litigation in the courts] necessarily undermine those protections, such actions violate the Constitution quite apart from any underlying misconduct they are designed to shield."  *See Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

The Supreme Court, however, has never recognized a *Bivens* remedy for First Amendment claims, *Reichle v. Howards*, 566 U.S. 658, 663 n.4 (2012); and the Ninth Circuit has declined to extend *Bivens* to access to court claims, *Vega v. United States*, 881 F.3d 1146, 1153 (9th Cir. 2018) (declining to expand Bivens remedy to include access to court claims against private defendants under the First Amendment); *Schwarz v. Meinberg*, 761 F. App'x 732, 733–34 (9th Cir. 2019) ("We decline to extend *Bivens* remedies to [the plaintiff's] claims—unsanitary cell

---

[6] Although Norton refers to the Eighth Amendment, ECF No. 1 at 9, it is the First Amendment that guarantees an inmate's right to access the court and to be free from retaliation.

conditions, access to courts, and request for placement in a camp facility—because these claims do not fall within claims authorized by the Supreme Court." (citation omitted)).

District courts, therefore, have consistently concluded that no *Bivens* remedy exists for access to court claims.  *See, e.g.*, *Camillo-Amisan v. Fed. Bureau of Prisons*, No. 2:17-cv-06634-ODW-JDE, 2019 WL 8138040, at *5 (C.D. Cal. Oct. 4, 2019) ("The Court declines to find a private right of action for Plaintiff's denial of access to courts claim under *Bivens*[.]"), *report and recommendation adopted sub nom. Camillo-Amisano v. Fed. Bureau of Prisons*, No. 2:17-cv-06634-ODW-JDE, 2019 WL 8137708 (C.D. Cal. Nov. 12, 2019); *Moore v. United States*, Case No.: 1:20-cv-00451-NONE-SAB (PC), 2020 WL 3265874, at *4 (E.D. Cal. June 17, 2020) ("[T]he Court . . . declines to find an implied *Bivens* cause of action under the First Amendment for the denial of access to the courts." (citation omitted)), *report and recommendation adopted*, Case No.: 1:20-cv-00451-NONE-SAB (PC), 2020 WL 6060869 (E.D. Cal. Oct. 14, 2020); *see also Free v. Peikar*, Case No. 1:17-cv-00159-AWI-MJS (PC), 2018 WL 1569030 (E.D. Cal. Mar. 30, 2018) ("Nationwide, district courts seem to be in agreement that, post-*Abbasi*, prisoners have no right to bring a *Bivens* action for violation of the First Amendment.").  Thus, Norton's access to court and retaliation claims in Count III cannot proceed.  *See Lanuza*, 899 F.3d at 1025 (noting that courts must first

20

consider whether providing a *Bivens* remedy is precluded by prior Ninth Circuit decisions).

Even if a *Bivens* remedy did exist for an access to court claim or a retaliation claim, Norton fails to state a plausible claim for relief under either theory.

"To establish a violation of the right of access to the courts, a prisoner must establish that he or she has suffered an actual injury." *Nev. Dep't of Corr. v. Greene*, 648 F.3d 1014, 1018 (9th Cir. 2011) (citing *Lewis v. Casey*, 518 U.S. 341, 349 (1996)). "Actual injury is a jurisdictional requirement that flows from the standing doctrine and may not be waived." *Greene*, 48 F.3d at 1018. "It is actual prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or to present a claim." *Id.* (internal quotation marks and citation omitted). Failing to allege that a nonfrivolous legal claim has been frustrated is fatal to an access to court claim. *See Alvarez v. Hill*, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008). Norton fails to allege that any Defendant's actions frustrated a nonfrivolous legal claim.

Although Robl's purported actions might have impeded Norton's access to the BOP's administrative remedy program and prevented Norton from exhausting his administrative remedies, this does not satisfy the actual injury requirement. *See Kerch v. Johnson*, Civil Action No. 5:17-CV-108 (MTT), 2018 WL 844416, at *2 n.4 (M.D. Ga. Feb. 13, 2018) ("[B]ecause the alleged interference with the

grievance procedure did not prevent the Plaintiff from bringing suit in court, he has suffered no actual injury."); *Jose-Nicolas v. Butler*, Case No. 16-cv-00402-MJR, 2016 WL 2643347, at *3 (S.D. Ill. May 10, 2016) (dismissing access to court claim where the plaintiff "was not prevented from filing [an] action in a timely manner, and he describe[d] no actual legal detriment that he suffered as a result of [the defendant's] conduct").

Regarding any retaliation claim, a viable claim of First Amendment retaliation requires:  (1) an assertion that a state actor took some adverse action against an inmate; (2) because of; (3) that prisoner's protected conduct; and that such action (4) chilled the inmate's exercise of his First Amendment rights. *Rhodes*, 408 F.3d at 567–68.  Norton has not plausibly alleged that any Defendant took an adverse action against him taken because of his protected conduct.  The fact that Norton "feels" as though he has been retaliated against is not enough.  In addition, Norton has not plausibly alleged that the exercise of his First Amendment rights has been chilled.  Norton therefore also fails to state a retaliation claim.

Norton's access to court and retaliation claims under *Bivens* are DISMISSED.  Because any amendment would be futile, this dismissal is without leave to amend.  *See Sylvia Landfield Tr.*, 729 F.3d at 1196.

**E.     Injunctive Relief Under *Bivens***

In his request for relief, Norton asks for:  (1) $5,000; (2) an "Order requiring medical evaluation for arachnoid cyst"; (3) "[s]egregation of inmates per Bureau of Prisons policy or transfer [Norton to] a facility based on his security level; and (4) a "Protective order against retaliation from the FDC Honolulu staff."  ECF No. 1 at 11.

"*Bivens* does not encompass injunctive and declaratory relief where . . . the equitable relief sought requires official government action."  *Solida*, 820 F.3d at 1093 (citations omitted); *see Higazy v. Templeton*, 505 F.3d 161 (2d Cir. 2007) ("The only remedy available in a *Bivens* action is an award for monetary damages from defendants in their individual capacities." (citation omitted)).  Thus, to the extent Norton seeks declaratory or injunctive relief requiring government action, such relief is not available under *Bivens*.[7]

---

[7] "[A] prisoner may bring a non-*Bivens* action for injunctive relief to stop Eighth Amendment violations based on conditions of confinement."  *Pinson v. Othon*, No. CV-20-00169-TUC-RM, 2020 WL 6273410, at *5 (D. Ariz. Oct. 26, 2020) (citation omitted).  To bring such a claim, a prisoner must:

> (1) invoke jurisdiction under 28 U.S.C. § 1331, (2) allege facts to state a colorable ongoing Eighth Amendment claim, (3) name as a defendant the person who would be responsible for carrying out any order for injunctive relief, and (4) request particular injunctive relief that is specifically targeted to resolving the ongoing Eighth Amendment violation.

*Id.*; *see also Carballo v. Barr*, 491 F. Supp. 3d 860, 867 (D. Nev. 2020) ("[A] plaintiff may sue a federal officer in his or her official capacity, invoking jurisdiction under 28 U.S.C. § 1331 and the court's inherent equitable powers, and seek injunctive relief to remedy alleged constitutional violations.").  Here, for the reasons set forth above, Norton fails to state a colorable Eighth Amendment claim.

## F. Motion for Emergency Hearing

Because Norton fails to state a colorable claim for relief, the Court DENIES without prejudice his Motion for Reconsideration of Court's Order Denying Plaintiff's Motion to Request an Emergency Hearing.  To the extent Norton thinks that he requires medical attention related to his arachnoid cyst, he should continue to bring this to the attention of officials at FDC Honolulu.

## IV. <u>LEAVE TO AMEND</u>

The Complaint is DISMISSED with partial leave granted to amend.  Norton may file an amended pleading on or before **June 13, 2022**.  Norton may not expand his claims beyond those already alleged herein or add new claims, without explaining how those new claims relate to the claims alleged in the Complaint. Claims that do not properly relate to those in the Complaint are subject to dismissal.

Norton must comply with the Federal Rules of Civil Procedure and the Local Rules for the District of Hawaii.  Local Rule 10.4 requires that an amended complaint be complete in itself, without reference to any prior pleading.  An amended complaint must be short and plain, comply with Rule 8 of the Federal Rules of Civil Procedure, and be submitted on the Court's prisoner civil rights form.  *See* LR99.2(a).  An amended complaint will supersede the preceding complaint.  *See Ramirez v. County of San Bernardino*, 806 F.3d 1002, 1008 (9th

24

Cir. 2015).  Defendants not renamed and claims not realleged in an amended

complaint may be deemed voluntarily dismissed.  *See Lacey v. Maricopa County*,

693 F.3d 896, 928 (9th Cir. 2012).

## V.  28 U.S.C. § 1915(g)

If Norton fails to file an amended complaint or is unable to amend his claims

to cure their deficiencies, this dismissal may count as a "strike" under 28 U.S.C.

§ 1915(g).  Under this "3-strikes" provision, a prisoner may not bring a civil action

or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or
> detained in any facility, brought an action or appeal in a court of the United
> States that was dismissed on the grounds that it is frivolous, malicious, or
> fails to state a claim upon which relief may be granted, unless the prisoner is
> under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## VI.  CONCLUSION

(1) The Complaint, ECF No. 1, is DISMISSED for failure to state a claim

pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b)(1).

(2) Norton may amend his pleading, however, by curing the deficiencies in

his claims on or before **June 13, 2022**.

(3) Failure to timely file an amended pleading may result in AUTOMATIC

DISMISSAL of this suit without further notice, and Norton may incur a strike

under 28 U.S.C. § 1915(g).

(4) ALTERNATIVELY, Norton may voluntarily dismiss this action pursuant to FRCP 41(a)(1), and such a dismissal will not count as a strike under 28 U.S.C. § 1915(g).

(5) Norton's Motion for Reconsideration of Court's Order Denying Plaintiff's Motion to Request an Emergency Hearing, ECF No. 14, is DENIED without prejudice.

(6) The Clerk is DIRECTED to send Norton a blank prisoner civil rights complaint form so that he can comply with this order if he elects to file an amended pleading.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, May 12, 2022.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

DANIEL EMERSON NORTON V. ESTELLA DERR, ET AL.; CV 22-00109 LEK-RT; ORDER DISMISSING COMPLAINT, ECF NO. 1, WITH PARTIAL LEAVE TO AMEND, AND DENYING MOTION FOR RECONSIDERATION OF COURT'S ORDER DENYING PLAINTIFF'S MOTION TO REQUEST AN EMERGENCY HEARING, ECF NO. 14