IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DANIEL EMERSON NORTON, | CIVIL NO. 22-00109-LEK-RT |
| Plaintiff, | MEMORANDUM IN SUPPORT |
| v. | |
| NATHAN KWON; KRIS ROBL, individually, | |
| Defendants. | |

<u>MEMORANDUM IN SUPPORT</u>

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES………………………………………………..i

I.      INTRODUCTION ....................................................................................1

II.     STATEMENT OF FACTS .......................................................................2

III.    STANDARD OF REVIEW ......................................................................3

IV.     PLAINTIFF FAILS TO STATE A *BIVENS* CLAIM AGAINST
        DEFENDANTS .......................................................................................4

        A.      Plaintiff has no damages remedy under Bivens after Egbert ...............5

        B.      New Context Analysis...........................................................................9

        C.      Special Factors Analysis ....................................................................13

                1.      Congress is better positioned to create remedies in the context
                        of chronic medical care in federal prisons ..........................................14

                2.      Alternative Remedies Already Exist for Plaintiff....................14

                3.      Congress' passage of the Prison Litigation Reform Act
                        ("PLRA")................................................................................17

V.      DEFENDANTS ARE PROETCED UNDER QUALIFIED IMMUNITY
        BECAUSE THERE WAS NO DELIBERATE INDIFFERENCE TO
        PLAINTIFF'S MEDICAL NEEDS.......................................................18

        A.      General Principles of Qualified Immunity..........................................18

        B.      Qualified Immunity for Law Enforcement Officers ...........................19

        C.      Constitutional Violation Standard – Deliberate Indifference .............20

        D.      Dr. Kwon and Mr. Robl Provided Appropriate Medical Care to
                Plaintiff and Were Not "Deliberately Indifferent"..............................22

VI.     CONCLUSION.......................................................................................23

## <u>TABLE OF AUTHORITIES</u>

### <u>Cases</u>

*Adams v. Johnson*,
   355 F.3d 1179 (9th Cir. 2004) ................................................................4

*Anderson v. Creighton*,
   483 U.S. 635 (1987) ................................................................ 19, 20

*Armour v. Depaola*,
   C/A No. 18cv3728, ECF No. 56 (N.D. Ill. 2020) ................................................11

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009)................................................................ 3, 4, 6, 8

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 570 (2007) ................................................................3, 4

*Bell v. Hood*,
   327 U.S. 678 (1946) ................................................................5

*Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*,
   403 U.S. 388 (1971) ................................................................ passim

*Butler v. Porter*,
   999 F.3d 287 (5th Cir. 2021) ................................................................17

*Butz v. Economou*,
   438 U.S. 478 (1978) ................................................................18

*Cagle v. Hutto*,
   177 F.3d 253 (4th Cir. 1999) ................................................................17

*Callahan* v. *Fed. Bureau of Prisons*,
   965 F.3d 520 (6th Cir. 2020) ................................................................ 15, 17

*Carlson v. Green*,
   446 U.S. 14 (1980) ................................................................ 6, 10, 11, 12

*Correctional Services Corp. v. Malesko*,
   534 U.S. 61 (2001) ................................................................6, 14

*Davis v. Passman*,
    442 U.S. 228 (1979) ................................................................. 6, 10, 12

*Davis v. Scherer*,
    468 U.S. 183 (1984) .........................................................................18

*Earle v. Shreves*,
    990 F.3d 774 (4th Cir. 2021) ............................................................8

*Egbert v. Boule*,
    142 S. Ct. 1793 (2022)........................................................... passim

*Estelle v. Gamble*,
    429 U.S. 97, 104 (1976) ................................................ 20, 21, 22, 23

*Farmer v. Brennan*,
    511 U.S. 825 (1994) .........................................................................21

*Fayer v. Vaughn*,
    649 F.3d 1061 (9th Cir. 2011) ..........................................................4

*Gomez v. Toledo*,
    446 U.S. 635 (1980) .........................................................................18

*Gonzalez v. Hasty*,
    269 F. Supp. 3d 45 (E.D.N.Y. 2017), aff'd, 755 F. App'x 67 (2d Cir. 2018) .....11

*Harlow v. Fitzgerald*,
    457 U.S. 800 (1982) .................................................................. 18, 19

*Hernández v. Mesa*,
    140 S. Ct. 735 (2020)........................................................... 6, 8, 9, 10

*Hirano v. Sand Island Treatment Ctr.*,
    No. CV 20-00473 DKWWRP, 2021 WL 54504 (D. Haw. Jan. 6, 2021)............22

*Horton v. California*,
    496 U.S. 128 (1990) .........................................................................18

*Hudson v. McMillian*,
    503 U.S. 1 (1992) .............................................................................20

*Hutchinson v. United States*,
    838 F.2d 390 (9th Cir. 1988) ..............................................................20

*Jeffers v. Gomez*,
    240 F.3d 845 (9th Cir. 2001) ..............................................................18

*Johnson v. Riverside Healthcare Sys.*,
    534 F.3d 1116 (9th Cir. 2008) ...............................................................4

*Lopez v. Smith*,
    203 F.3d 1122 (9th Cir. 2000) .............................................................21

*Malley v. Briggs*,
    475 U.S. 335 (1986) ............................................................................18

*Manzarek v. St. Paul Fire & Marine Ins. Co.*,
    519 F.3d 1025 (9th Cir. 2008) ...............................................................4

*Martinez v. U.S. Bureau of Prisons*,
    5:15cv2160-TJH, 2019 WL 5432052 (C.D. Cal. 2019).........................11

*McGuckin v. Smith*,
    974 F.2d 1050 (9th Cir. 1992) ....................................................... 21, 22

*Mitchell v. Forsyth*,
    472 U.S. 511 (1985) ...................................................................... 19, 20

*Montcalm Pub. Corp. v. Virginia.*,
    199 F.3d 168 (4th Cir. 1999) ...............................................................17

*Moreno v. Hoey*,
    C/A No. 1:19cv2756-DCC-SVH, 2020 WL 5986214 (D.S.C. 2020).................11

*Nestlé USA, Inc. v. Doe*,
    141 S. Ct. 1931 (2021).........................................................................13

*Saucier v. Katz*,
    533 U.S. 194 (2001) ............................................................................19

*Schweiker v. Chilicky*,
    487 U.S. 412 (1988) ............................................................................15

*Silva v. United States*.,
    No. 21-1008, 2022 WL 3023684 (10th Cir. Aug. 1, 2022)........................ 8, 9, 14

*Toguchi v. Chung*,
    391 F.3d 1051 (9th Cir. 2004) ...............................................................21

*Wilson v. Seiter*,
    501 U.S. 294 (1991) ...............................................................................21

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017)................................................................... passim

**Statutes**
18 U.S.C. § 4001(b)(1)...............................................................................16

28 U.S.C. § 1346 ................................................................................ 16, 17

28 U.S.C. § 1915 ......................................................................... 13, 15, 17

42 U.S.C. § 1983 .........................................................................................5

42 U.S.C. § 1997e(a)..................................................................................15

U.S. Const. amend. IV ...................................................................... 6, 8, 10

U.S. Const. amend. V...................................................................... 6, 10

U.S. Const. amend. VIII............................................................... passim

**Rules**
Fed. R. Civ. P. 12(b)(6)...........................................................................3, 4

**Regulations**
28 C.F.R. § 542.10 ....................................................................... 14, 15, 17

## I.      INTRODUCTION

Plaintiff's First Amended Complaint ("FAC") alleges Bureau of Prisons ("BOP") employees, Dr. Nathan Kwon, Clinical Director, and Mr. Kris Robl, Housing Unit Manager, assigned to the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu"), failed to provide adequate medical care.  Specifically, Plaintiff alleges he was diagnosed with an arachnoid cyst on his brain while housed at FCI Morgantown in West Virginia.  ECF 16 at 5.  According to Plaintiff, he met with Dr. Kwon on January 19, 2022 upon arrival at FDC Honolulu.  *Id*.  During this meeting, Plaintiff alleges Dr. Kwon assured him that he would be sent out to a neurologist for consultation regarding his cyst.  *Id*.  Plaintiff further asserts Dr. Kwon denied him anti-seizure medication "prescribed by his neurologist in West Virginia."  *Id*. at 6.  Plaintiff believes this caused him to suffer severe headaches and dizziness and "put the Plaintiff at risk of a fatal seizure."  *Id*.  Plaintiff alleges he sent numerous emails and paper "cop outs" to Dr. Kwon and Unit Manager Robl that they allegedly ignored.  *Id*.  As a result, Plaintiff argues that, in denying him proper care, Dr. Kwon and Mr. Robl were deliberately indifferent to his medical needs.  *Id*.  Plaintiff asserts the alleged denial of adequate medical care amounts to a violation of the Eighth Amendment's prohibition against cruel and unusual punishment.

The FAC's claim against Defendants Kwon and Robl must be dismissed.

1

*First*, the alleged constitutional tort claim presents a new context, which is not cognizable under the standard for recognizing *Bivens* claims, set forth in *Ziglar v. Abbasi*, 137 S. Ct. 1843 (2017) and recently re-affirmed in *Egbert v. Boule*, 142 S. Ct. 1793 (2022). *Second*, qualified immunity shields Defendants from personal liability. For the foregoing reasons, Plaintiff's case against Defendants should be dismissed with prejudice.

## II.   STATEMENT OF FACTS

On January 19, 2022, Dr. Kwon met with Plaintiff for an appointment. *See* Exhibit "A" to the Declaration of Harry Yee (Plaintiff's Medical Records) at 1. Amongst other things, Plaintiff reported experiencing chronic headaches and vertigo symptoms. *Id.* at 2. During this encounter, Dr. Kwon reviewed Plaintiff's medical notes in-person with him to better understand his medical history and to discuss the timeline of events. *Id.* According to Dr. Kwon's review, Plaintiff's previous CT scan and brain MRI returned "normal." *Id.* Additionally, medical records from March 12, 2021, May 24, 2021, and August 10, 2021 mention an "unremarkable brain MRI." Exhibit "A" at 1.

Nevertheless, Plaintiff indicated he was told he "might have an arachnoid cyst" and said he would like to continue his previously prescribed medication regimen of Propranolol and Topamax. *Id.* at 1–2. Plaintiff was supposed to follow-up with Neurology prior to his transfer from West Virginia but was unable

2

to do so before arriving to FDC Honolulu. *Id.* at 1. Based on this encounter, Dr. Kwon ordered a neurology evaluation with a target date in March 2022 and prescribed plaintiff the same regimen of Propranolol and Topamax. Exhibit "A" at pp.1–4. For unknown reasons and due to a third-party contractor serving as the primary method for scheduling inmate medical appointments, Plaintiff's neurology consultation was scheduled for September 2022. Exhibit "A" at 6. Unfortunately, in August 2022, prior to his neurology consult, Plaintiff transferred to FCI Sheridan, where he is currently housed indefinitely. Exhibit "A" at 5.

In addition to discussing and providing information on headaches and dizziness, Dr. Kwon also treated a variety of other medical issues, including Plaintiff's shoulder pain and hypertension.

## III.   STANDARD OF REVIEW

Dismissal pursuant to Federal Rules of Civil Procedure 12(b)(6) is proper when the complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Determining whether a complaint states a plausible claim for relief [is] ... a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 1950 (brackets added; citation

3

omitted)).  While the complaint need not set out "detailed factual allegations," *Bell Atlantic Corp.*, 550 U.S. at 555, it must provide sufficient factual amplification "to raise a right to relief above the speculative level." *Id.*  "A pleading that offers 'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action' will not do." *Ashcroft*, 129 S. Ct. at 1949 (quoting *Bell Atlantic Corp.*, 550 U.S. at 555) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice").

"A Rule 12(b)(6) dismissal may be based on either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Johnson v. Riverside Healthcare Sys.*, 534 F.3d 1116, 1121 (9th Cir. 2008) (internal quotations and citations omitted).  While the complaint must be construed in the light most favorable to the non-moving party, the Court need not accept as true "conclusory allegations of law and unwarranted inferences." *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (quoting *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004)); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

## IV.   PLAINTIFF FAILS TO STATE A *BIVENS* CLAIM AGAINST DEFENDANTS

Plaintiff attempts to bring a claim under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971) – a court-created cause of action, which permits a personal damages suit under very limited circumstances for

4

certain constitutional violations.  Plaintiff's claim, however, does not fall within the narrow scope of *Bivens* claims previously recognized by the Supreme Court and special factors counsel hesitation before engaging in the "disfavored judicial activity" of expanding *Bivens* to a new context of individual capacity claims. Further, even if the Court were inclined to create a new remedy in damages in this case, Plaintiff's claim is barred by qualified immunity.

A.    **Plaintiff has no damages remedy under *Bivens* after Egbert**

Damages actions pursuant to 42 U.S.C. § 1983 represent the remedy that Congress created for plaintiffs whose constitutional rights have been violated by state officials.  However, there is no parallel congressionally created remedy for constitutional violations committed by agents of the federal government.  In *Bivens*, the Supreme Court recognized an implied damages action to compensate persons injured by federal agents who violated the Fourth Amendment's prohibition against unreasonable searches and seizures.  403 U.S. at 397.  The *Bivens* court acknowledged that the Fourth Amendment does not provide for money damages "in so many words," but stated that "'where legal rights have been invaded, and a federal statute provides for a general right to sue for such invasion, federal courts may use any available remedy to make good the wrong done.'"  *Id*. at 396 (quoting *Bell v. Hood*, 327 U.S. 678, 684 (1946)).  The Court also noted that it was not limited by any "explicit congressional declaration that persons injured

5

by a federal officer's violation of the Fourth Amendment may not recover money damages from the agents," and determined that the case "involve[d] no special factors counseling hesitation in the absence of affirmative action by Congress [to create such a remedy]." *Id.* at 396–97. Thus, the *Bivens* court held that it could authorize a remedy under general principles of federal jurisdiction. *See id*. at 392.

Following *Bivens*, the Supreme Court implied similar remedies twice more, in a Fifth Amendment gender discrimination case, *Davis v. Passman*, 442 U.S. 228 (1979) (wherein an administrative assistant sued a U.S. Congressman for firing her because she was a woman), and in an Eighth Amendment cruel and unusual punishment clause case, *Carlson v. Green*, 446 U.S. 14 (1980) (wherein a prisoner's estate sued federal jailers for failing to treat the prisoner's asthma, which failure led to the prisoner's death). "After those decisions, however, the Court changed course." *Hernández v. Mesa*, 140 S. Ct. 735, 741 (2020). Although *Bivens, Passman*, and *Carlson* remain valid in their own contexts, the Supreme Court's willingness to extend *Bivens*-type remedies has grown increasingly narrow over time. *See, e.g., Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1948 (2009) ("Because implied causes of action are disfavored, the Court has been reluctant to extend *Bivens* liability 'to any new context or new category of defendants.'" (quoting *Correctional Services Corp. v. Malesko*, 534 U.S. 61, 68 (2001)).

Determining whether to imply a damages action pursuant to *Bivens*, Supreme Court precedent instructs district courts to ask two questions: (1) whether the case presents a "new *Bivens* context"—i.e., whether it is meaningfully different from the three cases in which the Supreme Court implied a damages action (*Ziglar*, 137 S. Ct. at 1859–60); and (2) if a claim arises in a new context, whether there are "special factors counselling hesitation"—i.e., whether such factors cause a court to hesitate in affirming that the Judiciary, as opposed to Congress, is well suited to consider and weigh the costs and benefits of allowing a damages action to proceed (*Id*. at 1858). In *Ziglar*, the Supreme Court stated:

> The proper test for determining whether a case presents a new *Bivens* context is as follows. If the case is different in a meaningful way from previous *Bivens* cases decided by this Court, then the context is new. Without endeavoring to create an exhaustive list of differences that are meaningful enough to make a given context a new one, some examples might prove instructive. A case might differ in a meaningful way because of the rank of the officers involved; the constitutional right at issue; the generality or specificity of the official action; the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted; the statutory or other legal mandate under which the officer was operating; the risk of disruptive intrusion by the Judiciary into the functioning of other branches; or the presence of potential special factors that previous *Bivens* cases did not consider.

137 S. Ct. at 1859–60. "Given the notable change in the Court's approach to recognizing implied causes of action, . . . the Court has made clear that expanding

7

the *Bivens* remedy is now a 'disfavored' judicial activity." *Id.* at 1857 (quoting

*Iqbal*, 129 S. Ct. at 1948).  Accordingly, any *Bivens* claim must be dismissed if it

arises in a new context and presents "'special factors counselling hesitation' in

fashioning a remedy absent action by Congress." *Earle v. Shreves*, 990 F.3d 774,

779 (4th Cir. 2021) (quoting *Ziglar*, 137 S. Ct. at 1860).

　　*Egbert* clarified this analytical framework in a manner that made it even

more rigorous, in effect making it significantly more unlikely that an implied cause

of action will be recognized.  The *Egbert* court acknowledged that its precedents

"describe two steps," but explained that these steps "often resolve to a single

question: whether there is any reason to think that Congress might be better

equipped to create a damages remedy."  142 S. Ct. at 1803; *see also Silva v. United*

*States.*, No. 21-1008, 2022 WL 3023684, at *3 (10th Cir. Aug. 1, 2022)

(recognizing that *Egbert* "appeared to alter the existing two-step *Bivens*

framework").

　　The Court instructed that if there is "even a single" rational reason to defer

to Congress to create a remedy for relief, "a court may not recognize a *Bivens*

remedy." *Egbert*, 142 S. Ct. at 1803 (citing *Hernández*, 140 S. Ct. at 741, 743).

Moreover, *Egbert* rejected the petitioner's Fourth Amendment claim despite its

extremely close factual and legal parallels with *Bivens* itself, affirming that the

plaintiff's Fourth Amendment claim presented a new *Bivens* context despite the

fact that, as in *Bivens*, the alleged excessive force arose in the setting of the plaintiff's arrest by a law enforcement officer.  *Id.* at 1800–01, 1804.  The Court spelled out the takeaway from this demanding approach: a *Bivens* remedy will be unavailable "in most every case."  *Id.* at 1803 ("If there is a rational reason to think that [Congress is better situated than the courts to decide whether to provide for a damages remedy]—as it will be in most every case—no *Bivens* action may lie.  Our cases instruct that, absent utmost deference to Congress' preeminent authority in this area, the courts arrogate legislative power." (cleaned up)).  As the Tenth Circuit recently stated, "[t]he Supreme Court's message could not be clearer— lower courts expand *Bivens* claims at their own peril."  *Silva*, 2022 WL 3023684, at *1.

### B.    New Context Analysis

Plaintiff's *Bivens* claim presents a new context both because it diverges factually from the Court's three *Bivens* cases and because it raises potential special factors that the Court has not considered in the past.  To constitute a new context, a case need only be "different in a meaningful way from previous *Bivens* cases decided by th[e] [Supreme] Court."  *Abbasi*, 137 S. Ct. 1843, 1859 (2017).  The Court's understanding of a new context "is broad," *Hernandez*, 140 S. Ct. at 743, and the analysis is "easily satisfied" even for claims that have "significant

parallels" to one of the three previously recognized *Bivens* contexts.  *Abbasi*, 137 S. Ct. at 1865.

Here, Plaintiff's claim clearly bears no resemblance to *Bivens*, 403 U.S. 388 (Fourth Amendment claim for warrantless search and seizure at the plaintiff's home), or *Passman*, 442 U.S. 228 (Fifth Amendment due process claim for sex discrimination in employment context).  Thus, *Carlson* is the only prior *Bivens* case with any similarities to Plaintiff's.  *See* 446 U.S. 14.  But while *Carlson* also involved an Eighth Amendment claim for deliberate indifference to serious medical needs, *id*. at 16 n.1, "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized."  *Hernandez*, 140 S. Ct. at 743; *see also Abbasi*, 137 S. Ct. at 1864 (cases involving the same "constitutional right" and "mechanism of injury" as a prior *Bivens* case can still present a new context). Aside from the overarching constitutional theory at issue, this case shares little in common with *Carlson*.

In *Carlson*, the Plaintiff was the estate of an inmate who died after prison officials "kept him in [an inadequate] facility against the advice of doctors, failed to give him competent medical attention for some eight hours after he had an asthmatic attack, administered contra-indicated drugs which made his attack more severe, attempted to use a respirator known to be inoperative which further

10

impeded his breathing, and delayed for too long a time his transfer to an outside hospital." 446 U.S. 16, n.1.  In other words, *Carlson* focused on a specific incident of gross and fatal incompetence during a medical emergency.  Here, in contrast, the *Bivens* claim turns on allegations that FDC Honolulu employees, Dr. Kwon and Mr. Robl, delayed Plaintiff's allegedly necessary outside consultation for a self-reported arachnoid cyst on his brain.

Other courts have found a new context in Eighth Amendment cases where the medical condition and care at issue were equally different from *Carlson*.  *See*, *e.g.*, *Armour v. Depaola*, C/A No. 18cv3728, ECF No. 56 (N.D. Ill. 2020) (new context where plaintiff alleged defendant prevented him from receiving his medication); *Moreno v. Hoey*, C/A No. 1:19cv2756-DCC-SVH, 2020 WL 5986214, at *1 (D.S.C. 2020) (observing that alleged deliberate indifference to "sleep apnea, back pain, prostate issues, and a lump on [the plaintiff's] testicle" may present different context from *Carlson*, but dismissing on other grounds); *Martinez v. U.S. Bureau of Prisons*, 5:15cv2160-TJH, 2019 WL 5432052, at *8 (C.D. Cal. 2019) (failure to treat hypertension was "demonstrably different in kind and severity" from *Carlson*); *Gonzalez v. Hasty*, 269 F. Supp. 3d 45, 65 (E.D.N.Y. 2017), aff'd, 755 F. App'x 67 (2d Cir. 2018) (new context where plaintiff alleged that officials failed to provide dental hygiene supplies and supportive shoes).  The same result is warranted here.

Plaintiff's *Bivens* claim does not involve a medical emergency, as did *Carlson*, but rather focuses on a long-term and ongoing course of medical treatment of Plaintiff's brain cyst. This difference is significant for multiple reasons, including that administrative and injunctive relief would have a completely different application to Plaintiff's claim than to the claims in *Carlson*, where the failure to properly address a medical emergency proved fatal. *See Egbert*, 142 S. Ct. at 1803 (explaining that "a new context arises when there are 'potential special factors that previous *Bivens* cases did not consider'" (quoting *Ziglar*, 137 S. Ct. at 1864)). Whereas the Court in *Carlson* fashioned a *Bivens*-type remedy to make right a grave constitutional wrong, Plaintiff's *Bivens* claim here risks transforming this Court into an ad hoc medical review board tasked with deciding, with little to no judicial guidance, which medical errors, if any, cross the threshold into constitutional injury. It is not important that Plaintiff's claim parallels those in *Carlson* to the degree they are brought under the Eighth Amendment and relate to medical care in the prison setting generally.

After *Egbert*, such broad similarities with *Bivens*, *Passman*, or *Carlson* are not sufficient on their own to authorize a claim. *See* 142 S. Ct. at 1804–05 (affirming a finding of a new context despite "almost parallel circumstances"). Rather, Plaintiff's *Bivens* claim arises in a new context and special factors, which *Carlson* never considered, warrant a full analysis of whether it would offend

12

separation of powers principles to authorize the type of *Bivens* claim that Plaintiff proposes here. *See Egbert*, 142 S. Ct. at 1808.

## C.    Special Factors Analysis

So long as there is "[e]ven a single sound reason" for a court "to defer to Congress" rather than create an implied damages remedy, it must do so. *Egbert*, 142 S. Ct. at 1803 (quoting *Nestlé USA, Inc. v. Doe*, 141 S. Ct. 1931, 1937 (2021)). A "special factor" indicates that Congress is better suited than the Judiciary to "weigh the costs and benefits" of creating a new damages remedy. *Id*. (quoting *Ziglar*, 137 S. Ct. at 1858). The special factors inquiry is broad-ranging and simply asks "whether there is any rational reason (even one) to think that Congress is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id*. at 1805 (emphasis in original) (quoting *Ziglar*, 137 S. Ct. at 1858). "[S]eparation-of-powers principles are or should be central to the analysis." *Ziglar*, 137 S. Ct. at 1857.

This case presents several sound reasons for deference, including: (1) Congress is better positioned to create remedies in the context of chronic medical care in federal prisons; (2) the Government has already provided alternative remedies that protect claimants like Plaintiff, including processes for administrative and injunctive relief; and (3) Congress' passage of the Prison Litigation Reform Act ("PLRA").

13

### 1. Congress is better positioned to create remedies in the context of chronic medical care in federal prisons

The "Judiciary is not undoubtedly better positioned than Congress to authorize a damages action" in the context of chronic medical care in federal prisons. *See Egbert*, 142 S. Ct. at 1805 (holding the same as to border security context because it implicates national security considerations). The provision of chronic medical care is a specialized activity requiring a high degree of training and qualification. In the prison context, the provision of such care is made all the more multifaceted because it must coincide with the security demands and inherent limitations of the custody setting. Given this constellation of circumstances, "the Judiciary is comparatively ill suited to decide whether a damages remedy against any [BOP medical provider] is appropriate." *Id*.

### 2. Alternative Remedies Already Exist for Plaintiff

The Government has "provided alternative remedies for aggrieved parties in [Plaintiff's] position that independently foreclose a *Bivens* action here." *Egbert*, 142 S. Ct. at 1806. The BOP's Administrative Remedy Program ("ARP") allows an inmate who believes they are receiving inadequate medical care to file a grievance to correct the issue. *See* 28 C.F.R. § 542.10; *see also Egbert*, 142 S. Ct. at 1806 (holding that the U.S. Border Patrol's grievance procedure foreclosed a *Bivens* remedy and citing BOP's ARP as a special factor that made a *Bivens* claim unavailable in *Malesko*, 534 U.S. at 74); *Silva*, 2022 WL 3023684, at *4

14

(concluding that the availability of ARP alone was enough to bar the plaintiff's
*Bivens* claim based on *Egbert's* reasoning). "The [ARP] process is substantial; it
contains its own statutes of limitations, filing procedures, and appeals process.
And prisoners may retain attorneys for assistance with the process." *Callahan* v.
*Fed. Bureau of Prisons*, 965 F.3d 520, 524 (6th Cir. 2020) (internal citation
omitted).

Notably, with respect to federally incarcerated persons, by adding an
administrative exhaustion requirement to the PLRA, see 42 U.S.C. § 1997e(a),
Congress incorporated the ARP into its scheme for resolving inmate disputes and
decreasing the amount of litigation emanating from prisons. The ARP thus bears
the endorsement of both the BOP and Congress as the proper means of addressing
federal inmate complaints. Plaintiff's failure to exhaust his administrative
remedies in this case is of little consequence as the Court has repeatedly explained,
with respect to alternative processes, that "the absence of relief 'does not by any
means necessarily imply that courts should award money damages.'" *Egbert*, 142
S. Ct. at 1808 (quoting *Schweiker v. Chilicky*, 487 U.S. 412, 421 (1988)). Rather,
"the question whether a given remedy is adequate is a legislative determination
that must be left to Congress, not the federal courts." *Id*. at 1806 (2022).

Additionally, Congress has legislated extensively regarding the rights and
protections of incarcerated persons but has never created the remedy Plaintiff now

15

seeks from this Court.  This factor alone should counsel hesitation.  When Congress has legislated extensively on a topic but declined to create a damages remedy, "the silence of Congress is relevant" and suggests an intent not to create such a remedy.  *Ziglar*, 137 S. Ct. at 1862.  Relatedly, Congress's decision to delegate authority to an agency and insulate the agency's decision-making from judicial review also "mak[es] it less likely that Congress would want the Judiciary to interfere" by authorizing a *Bivens* remedy.  *See id*. at 1858 (discussing contexts in which Congress has designed regulatory authority "in a guarded way").

Numerous aspects of the maintenance of federal prison institutions and the treatment, rights, and grievance procedures of persons incarcerated there are regulated by statute, including the provision of medical care.  But despite mandating adequate medical care, Congress has never opted to create an individual capacity cause of action that permits federal prisoners to sue BOP healthcare providers when their services are perceived to fall short.  Instead, Congress has delegated broad authority to the Attorney General over "[t]he control and management of Federal penal and correctional institutions[.]"  18 U.S.C. § 4001(b)(1).

The FTCA provides another alternative process that allows inmates to remedy past harm related to medical care by seeking damages from the United States.  In fact, a negligence claim under the FTCA will often provide an inmate's

best option to recover damages.  Between the ARP, injunctive relief, and the

FTCA, inmates in Plaintiff's position have multiple alternative processes to protect

their interest in obtaining adequate medical care.

### 3.    Congress' passage of the Prison Litigation Reform Act ("PLRA")

Rather than expand the scope of prisoner litigation, Congress passed the

PLRA in 1995 to "limit litigation brought by prisoners."  *Montcalm Pub. Corp. v.*

*Virginia.*, 199 F.3d 168, 171 (4th Cir. 1999); *see also Cagle v. Hutto*, 177 F.3d

253, 257 (4th Cir. 1999) (explaining that the PLRA is intended to "remove the

federal district courts from the business of supervising the day-to-day operation" of

prisons).  As multiple courts have noted, "Congress paid close attention to inmate

constitutional claims when it enacted the [PLRA] of 1995," *Callahan*, 965 F.3d at

524, but did not create a "standalone damages remedy against federal jailers," *Id*.

(quoting *Ziglar*, 137 S. Ct. at 1865); *see also Butler v. Porter*, 999 F.3d 287, 294

(5th Cir. 2021) (observing the same and rejecting *Bivens* remedy).  Congress has

thus had opportunities to authorize Plaintiff's proposed *Bivens* claim when

legislating on multiple subjects—including prison medical care and prisoner

litigation—but has always declined.  This suggests that it would be inappropriate

for this Court to act in Congress's place by implying a remedy.

/ /

/ /

17

## V. DEFENDANTS ARE PROETCED UNDER QUALIFIED IMMUNITY BECAUSE THERE WAS NO DELIBERATE INDIFFERENCE TO PLAINTIFF'S MEDICAL NEEDS

### A. General Principles of Qualified Immunity

The Supreme Court has held that federal executive officials, other than those performing adjudicatory or prosecutorial functions, are entitled to qualified good faith immunity from personal liability for civil damages. *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Butz v. Economou*, 438 U.S. 478 (1978). Qualified immunity sharply reduces retaliatory litigation and encourages government officers to act decisively; the doctrine thus promotes the "effective performance of [governmental] duties." *Davis v. Scherer*, 468 U.S. 183, 195 (1984).

The qualified immunity defense should always be raised in the first response to a civil suit, whether that response is an answer or a motion to dismiss. The most important reason is that the issue will be waived unless it is raised in the earliest motion. *Gomez v. Toledo*, 446 U.S. 635 (1980). *See also Horton v. California*, 496 U.S. 128 (1990). The qualified immunity defense shields all government officials except those who are either plainly incompetent or who knowingly violate the law. *Jeffers v. Gomez*, 240 F.3d 845 (9th Cir. 2001); *Malley v. Briggs*, 475 U.S. 335, 341 (1986). As long as a defendant government employee could reasonably have thought his actions were consistent with the rights he was alleged to have violated, the defendant federal employee is entitled to qualified immunity.

*Anderson v. Creighton*, 483 U.S. 635, 638 (1987).

The Supreme Court established a two-step analysis to use when officers are alleged to have violated Constitutional rights. *Saucier v. Katz*, 533 U.S. 194 (2001). The analysis must be: (1) whether a Constitutional right would have been violated on the facts alleged, taken in the light most favourable to the party asserting the injury, and (2) if the violation is established, whether the right was clearly established in the specific context of the case. *Id*. at 201. A court will grant a government actor qualified immunity if the actor's conduct satisfies either prong of the two-step test for qualified immunity outlined by the Supreme Court in *Saucier*.

### B.  Qualified Immunity for Law Enforcement Officers

For law enforcement officers, claims are barred, "insofar as the [agent's] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. The Supreme Court noted that "[u]nder this [test], an official may be entitled to qualified immunity from suit even where he has violated a plaintiff's rights - if [those rights] were not then 'clearly established' or if a reasonable person in the official's position could have failed to appreciate that his conduct would violate them." *Mitchell v. Forsyth*, 472 U.S. 511, 535 (1985).

The qualified immunity standard focuses on: "the objective (albeit fact-specific) question whether a reasonable officer could have believed [his actions] to be lawful, in light of clearly established law and the information the [. . .] officers possessed." *Anderson*, 483 U.S. at 641. If so, the officer's actions are "objectively legally reasonable" and he or she is immune from suit. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The Supreme Court has instructed that in order to be clearly established, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson*, 483 U.S. at 640.

### C.    Constitutional Violation Standard – Deliberate Indifference

It is well-established that the "government has an obligation to provide medical care for those whom it punishes by incarceration." *Hutchinson v. United States*, 838 F.2d 390, 394 (9th Cir. 1988) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Accordingly, the Eighth Amendment's proscription against cruel and unusual punishment may be violated by an official's "deliberate indifference to the serious medical needs of a prisoner." *Estelle*, 429 U.S. at 104. However, "[b]ecause society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are "serious." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (citing *Estelle*, 429 U.S. at 103-04).

To state a claim for deliberate indifference to a serious medical need, the prisoner must demonstrate: (1) that he or she suffered from a "serious medical condition of which the prison officials should have been aware;" and (2) that prison officials were "deliberately indifferent" to the prisoner's serious medical needs. *Wilson v. Seiter*, 501 U.S. 294, 297 (1991); *Lopez v. Smith*, 203 F.3d 1122, 1131 (9th Cir. 2000) (citing *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992)).  A "serious" medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. at 104.  If an inmate establishes a serious medical need, then the inmate must show the prison official responded to the serious medical need with deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  "Deliberate indifference is a high legal standard." *Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).  Specifically, deliberate indifference exists when a prison official knows of and disregards a serious medical condition or when an official is "aware of facts from which the inference could be drawn that a substantial risk of harm exists," and actually draws such an inference. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994).  In order to show deliberate indifference, an inmate must allege sufficient facts to indicate that prison officials acted with a culpable state of mind. *Wilson v. Seiter*, 501 U.S. at 302.

In sum, a determination of deliberate indifference requires that the plaintiff

establish both: (1) the existence of a serious medical need which a reasonable

doctor would find worthy of treatment, and (2) the purposeful act or failure to act

on the part of the defendant so as to constitute an "unnecessary and wanton

infliction of pain" which is "repugnant to the conscience of mankind." *Estelle*, 429

U.S. at 105-106; *McGuckin v. Smith*, 974 F.2d at 1059.

### D.   Dr. Kwon and Mr. Robl Provided Appropriate Medical Care to Plaintiff and Were Not "Deliberately Indifferent"

Here, there are no factual allegations that Dr. Kwon personally committed

any specific action or inaction that resulted in a constitutional violation.  Rather,

Plaintiff only makes vague and conclusory allegations about Defendants'

apparently ignoring emails.  *E.g.* ECF 16 at 6 ("This course of treatment, more

accurately lack thereof, is a clear example of a conscious disregard of the

Plaintiff's health.").  Such conclusory allegations are insufficient to support a

*Bivens* claim.  *See Hirano v. Sand Island Treatment Ctr.*, No. CV 20-00473

DKWWRP, 2021 WL 54504, at *7 (D. Haw. Jan. 6, 2021) (dismissing claim

where complaint did not plausibly allege personal involvement in any

unconstitutional conduct).

Even if Plaintiff's statements are taken as true, both tests fail.  Objectively,

Plaintiff does not, and cannot show, that Dr. Kwon took any actions that deprived

him of life's necessities.  Plaintiff sought and received medical care within FDC

Honolulu whenever he wanted.  Significantly, Plaintiff does not allege Dr. Kwon

denied him medical care *inside* the FDC Honolulu medical clinic.  Instead, Plaintiff asserts Dr. Kwon failed to timely refer him for an off-site neurology consultation.

Further, Plaintiff fails to allege any facts showing that Defendants acted with subjective deliberate indifference.  To the contrary, by alleging delayed care, Plaintiff's FAC sounds in negligence.  Unfortunately for Plaintiff, negligence does not rise to the level of a constitutional violation.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (only deliberate indifference to serious medical needs, and not negligence such as the mere failure to provide medical care, implicates Eighth Amendment prohibition against cruel and unusual punishment).

## VI.   CONCLUSION

For the reasons stated above, Defendants Dr. Nathan Kwon and Unit Manager Kris Robl, employees at FDC Honolulu, respectfully request the Court dismiss this case with prejudice.

DATED: January 13, 2023 at Honolulu, Hawaii.

CLARE E. CONNORS
United States Attorney
District of Hawaii

/s/ Harry Yee
By_____
HARRY YEE
Assistant U.S. Attorney

Attorneys for Defendants

23