IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| DANIEL EMERSON NORTON, #90201-053,<br><br>             Plaintiff,<br><br>  vs.<br><br>DR. KWON, *et al.*,<br><br>             Defendants. | CIV. NO. 22-00109 LEK-RT<br><br>ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT |

### ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT

### I. INTRODUCTION

Pro se Plaintiff Daniel Emerson Norton ("Norton") brought this suit pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), alleging that Defendants Dr. Nathan Kwon and Kris Robl, two prison officials at the Federal Detention Center in Honolulu, Hawaii ("FDC Honolulu"), violated the Eighth Amendment's prohibition against cruel and unusual punishment by denying him adequate medical care in connection with an arachnoid cyst.[1] *See*

---

[1] According to the Federal Bureau of Prisons' online inmate locator, Norton is now incarcerated at the Federal Correctional Institution in Sheridan, Oregon ("FCI Sheridan"). *See*

(continued . . .)

ECF No. 16 at PageID.93–PageID.94.  Defendants filed a Motion to Dismiss First Amended Complaint ("Motion") arguing, among other things, that Norton's claims are not cognizable under *Bivens*.[2]  *See* ECF No. 37 at PageID.151–PageID.152; *see also* ECF No. 37-1 at PageID.163–PageID.176.  The Court agrees that Norton cannot pursue his claims for damages against Defendants under *Bivens* and, for the reasons stated below, GRANTS Defendant's Motion, ECF No. 37, with respect to those claims.[3]  To the extent Norton also seeks injunctive relief, the Court must dismiss as moot those claims because Norton was transferred from FDC Honolulu to FCI Sheridan.

## II.  BACKGROUND

On May 20, 2020, while he was incarcerated at the Federal Correctional Institution in Morgantown, West Virginia, Norton was diagnosed with an arachnoid

---

Federal Bureau of Prisons, https://www.bop.gov/inmateloc/ (select "Find By Number"; enter "90201-053"; and select "Search") (last visited Apr. 20, 2023).

[2] Even assuming that Norton's damages claims are cognizable, Defendants argue that qualified immunity shields them from personal liability.  *See* ECF No. 37 at PageID.152; ECF No. 37-1 at PageID.177–PageID.182.  Because no *Bivens* remedy is available to Norton, the Court does not reach Defendants' qualified immunity argument.  *See Pettibone v. Russell*, 59 F.4th 449, 457 (9th Cir. 2023) ("Because [plaintiff] has no cause of action under *Bivens*, we need not consider whether [defendant] would be entitled to qualified immunity.").

[3] In his original Complaint, Norton also named the warden at FDC Honolulu as a defendant.  *See* ECF No. 1 at PageID.1.  The Court previously dismissed any claims against the warden.  *See* ECF No. 15 at PageID.71–PageID.77.

cyst on his brain.[4]  ECF No. 16 at PageID.93.  Norton met with Dr. Kwon at FDC Honolulu on January 19, 2022.  *Id.*  During this meeting, Dr. Kwon assured Norton that he would be referred to a neurologist.  *Id.*

Between February 18, 2022, and January 29, 2022, Norton was deprived of his anti-seizure medication.  *Id.* at PageID.94.  Because of this, Norton experienced severe headaches and dizziness.  *Id.*  Norton complained about this deprivation in multiple e-mails to Dr. Kwon and informal complaints to Robl, but Norton received no immediate response.  *Id.*

On March 1, 2022, Norton received a response from Robl confirming the cyst and Norton's need for medication.  *Id.*  The response also set a "target consultation date" for an unspecified day in March.  *Id.*  Norton sent additional e-mails to Dr. Kwon after he was not seen by a neurologist in March or early April.  *Id.*

On April 26, 2022, Norton received a response from Dr. Kwon.  *Id.*  Dr. Kwon stated that he would elevate Norton's concerns to other prison officials, including the assistant warden.  *Id.*  Norton then sent additional follow-up e-mails to Dr. Kwon on May 9, 2022, and May 19, 2022.  *Id.*  Norton had received no response by June 1, 2022.  *Id.*

---

[4] "Arachnoid cysts are the most common type of brain cyst.  They are often congenital, or present at birth (primary arachnoid cysts).  Head injury or trauma can also result in a secondary arachnoid cyst.  The cysts are fluid-filled sacs, not tumors."  Johns Hopkins Medicine, Arachnoid Cysts, https://www.hopkinsmedicine.org/health/conditions-and-diseases/arachnoid-cysts (last visited Apr. 20, 2023).

On June 3, 2022, the Court received the operative pleading in this suit—that is, the First Amended Complaint ("FAC"). *Id.* In the FAC, Norton alleges that Dr. Kwon and Robl violated the Eighth Amendment's prohibition against cruel and unusual punishment by denying him adequate medical care in connection with his arachnoid cyst. *Id.* at PageID.93–PageID.94. Norton seeks $5,000 in damages and a court order requiring medical treatment. *Id.* at PageID.97.

Defendants filed the Motion on January 13, 2023, arguing that the FAC should be dismissed because Norton's constitutional tort claims present a new context, which is not cognizable under the Supreme Court's current *Bivens* framework. *See* ECF No. 37 at PageID.152; *see also* ECF No. 37-1 at PageID.163–PageID.176. The Court received Norton's Response on March 31, 2023. ECF No. 41. Defendants did not file a Reply. The Court decides this matter without a hearing pursuant to Local Rule 7.1(d).

## III.  STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint that fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). On a Rule 12(b)(6) motion to dismiss, "the court accepts the facts alleged in the complaint as true," and "[d]ismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged." *UMG Recordings, Inc. v. Shelter Capital Partners LLC*, 718 F.3d 1006, 1014 (9th Cir. 2013) (quoting

*Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1988)) (alteration in original).  Conclusory allegations of law, unwarranted deductions of fact, and unreasonable inferences are insufficient to defeat a motion to dismiss.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Nat'l Ass'n for the Advancement of Psychoanalysis v. Cal. Bd. of Psychology*, 228 F.3d 1043, 1049 (9th Cir. 2000) (citation omitted).  Furthermore, the court need not accept as true allegations that contradict matters properly subject to judicial notice.  *See Sprewell*, 266 F.3d at 988.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Facial plausibility exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly*, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (some alterations in original).

Norton is appearing pro se; thus, the Court liberally construes his pleadings. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam); *Eldridge v. Block*, 832 F.2d 1132, 1137 (9th Cir. 1987). The Court also recognizes that "[u]nless it is absolutely clear that no amendment can cure the defect . . . a pro se litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995); *see also Rowley v. Bannister*, 734 F.3d 967, 977–78 (9th Cir. 2013).

## IV. ANALYSIS

Norton brought this suit pursuant to *Bivens* alleging that Defendants violated the Eighth Amendment's prohibition against cruel and unusual punishment by denying him adequate medical care in connection with his arachnoid cyst. ECF No. 16 at PageID.93–PageID.94. Before the merits of Norton's claims can be reached, the Court must first decide whether a *Bivens* remedy is available to Norton. *See, e.g.*, *Manansingh v. United States*, Case No. 2:20-cv-01139-DWM, 2021 WL 2080190, at *8 (D. Nev. May 24, 2021) ("In a constitutional action against a federal officer, a threshold consideration is whether a plaintiff may bring a *Bivens* suit in the first place."). Because no such remedy exists, Norton's claims for damages against Defendants must be dismissed.

A.     **Legal Framework for Determining Whether a *Bivens* Remedy Exists**

While "Congress has made a cause of action available to any person who has suffered 'the deprivation of any rights, privileges, or immunities secured by the Constitution and laws' at the hands of someone acting under color of state law," it "has not created a general cause of action to redress violations of the Constitution by *federal* officers." *Pettibone*, 59 F.4th at 454 (quoting 42 U.S.C. § 1983).

In three cases decided between 1971 and 1980, however, "the Supreme Court held that the Constitution contains an implied cause of action through which plaintiffs can seek damages from federal officers who violate their constitutional rights." *Id.* In *Bivens*, the Court held that a plaintiff could seek damages from Federal Bureau of Narcotics agents who allegedly violated the Fourth Amendment right to be free from unreasonable searches and seizures.  403 U.S. at 397.  The Court extended the *Bivens* remedy in *Davis v. Passman*, where a plaintiff alleged that her employer, a Member of Congress, had discriminated against her because of her sex, in violation of the Due Process Clause of the Fifth Amendment.  442 U.S. 228, 230–31 (1979).  Finally, in *Carlson v. Green*, the Court held that the estate of a deceased inmate could seek damages from federal prison officials who allegedly violated the inmate's Eighth Amendment right to be free from cruel and unusual punishment while treating a prisoner's severe asthma that ultimately resulted in the prisoner's death.  446 U.S. 14, 16–18 (1980).  "These three cases—*Bivens*, *Davis*, and *Carlson*—represent the only

instances in which the Court has approved of an implied damages remedy under the Constitution itself." *Ziglar v. Abbasi*, 582 U.S. 120, 132 (2017).

The Supreme Court "has made clear that expanding the *Bivens* remedy is now a 'disfavored' judicial activity." *Abbasi*, 582 U.S. at 135 (citation omitted); *Egbert v. Boule*, 142 S. Ct. 1793, 1802 (2022) ("At bottom, creating a cause of action is a legislative endeavor."). Indeed, the Supreme Court has indicated that "if [the Court] were called to decide *Bivens* today, [it] would decline to discover any implied causes of action in the Constitution." *Egbert*, 142 S. Ct. at 1809. Since 1980, therefore, the Supreme Court "has 'consistently refused to extend *Bivens* to any new context or new category of defendants.'"[5] *Abbasi*, 582 U.S. at 135 (citation omitted).

Now, when asked to imply a *Bivens* remedy, courts must use "caution." *Egbert*, 142 S. Ct. at 1803. If there is even a "single sound reason" to think that

---

[5] The Supreme Court has declined to create a *Bivens* remedy in the following cases: a First Amendment suit against a federal employer, *see Bush v. Lucas*, 462 U.S. 367 (1983); a race discrimination suit against military officers, *see Chappell v. Wallace*, 462 U.S. 296 (1983); a substantive due process suit against military officers, *see United States v. Stanley*, 483 U.S. 669 (1987); a procedural due process suit against Social Security officials, *see Schweiker v. Chilicky*, 487 U.S. 412 (1988); a procedural due process suit against a federal agency for wrongful termination, *see FDIC v. Meyer*, 510 U.S. 471 (1994); an Eighth Amendment suit against a private halfway house operator under contract with the BOP, *see Corr. Servs. Corp. v. Malesko*, 534 U.S. 61 (2001); a claim of retaliation by Bureau of Land Management officials against plaintiff for his exercise of Fifth Amendment property rights, *see Wilkie v. Robbins*, 551 U.S. 537 (2007); a suit under the Fifth, Eighth, and Fourteenth Amendments against United States Public Health Service personnel, *see Hui v. Castaneda*, 559 U.S. 799 (2010); an Eighth Amendment suit against prison guards at a private prison, *see Minneci v. Pollard*, 565 U.S. 118 (2012); a Fifth Amendment suit against Department of Justice officials, *see Abbasi*, 582 U.S. at 155; a Fourth and Fifth Amendment suit against a United States Border Patrol agent, *Hernandez v. Mesa*, 140 S. Ct. 735 (2020); and a First and Fourth Amendment suit against a United States Border Patrol Agent, *see Egbert*, 142 S. Ct. at 1793.

Congress might doubt the efficacy or necessity of a damages remedy, courts must refrain from creating it. *Id.* Thus, "'the most important question is who should decide whether to provide for a damages remedy, Congress or the courts?'" *Id.* (citation omitted). In "most every case," the answer will be Congress. *Id.*

In deciding whether a *Bivens* remedy is available in a particular case, courts apply a two-step framework. *Pettibone*, 59 F.4th at 454. At step one, courts "ask whether the case presents 'a new *Bivens* context.'" *Egbert*, 142 S. Ct. at 1803. At step two, "a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'"[6] *Pettibone*, 59 F.4th at 454 (citation omitted).

**B.     Norton's Claims Present a New Context**

The Supreme Court's "understanding of a 'new context' is broad." *Hernandez*, 140 S. Ct. at 743. A case presents a new context if it is "different in a meaningful way from previous *Bivens* cases decided by [the Supreme Court]." *Abbasi*, 582 U.S. at 139. The Supreme Court has provided a non-exhaustive list of differences that

---

[6] In *Egbert*, the Supreme Court noted that these two steps "often resolve to a single question: whether there is any reason to think that Congress might be better equipped to create a damages remedy." 142 S. Ct. at 1803. At least one court of appeals has suggested in dicta that this sentence "appear[s] to alter the existing two-step *Bivens* framework." *Silva v. United States*, 45 F.4th 1134, 1139 (10th Cir. 2022). The Ninth Circuit, however, has stated that *Egbert* only "reiterate[d] the longstanding first step of the *Bivens* question" and "clarified" the second step. *Mejia v. Miller*, 61 F.4th 663, 667 (9th Cir. 2023). The Court therefore applies the two-step framework, as clarified in *Egbert*, to analyze Norton's claims.

may be "meaningful" including the rank of the officers involved, the constitutional right at issue, the generality or specificity of the official action, the extent of judicial guidance as to how an officer should respond to the problem or emergency to be confronted, the statutory or other legal mandate under which the officer was operating, the risk of disruptive intrusion by the Judiciary into the functioning of other branches of government, and the presence of potential special factors that previous *Bivens* cases did not consider. *Id.* at 139–40.

The Supreme Court has stated that "[a] claim may arise in a new context even if it is based on the same constitutional provision as a claim in a case in which a damages remedy was previously recognized." *Hernandez*, 140 S. Ct. at 743. Thus, even where a "case has significant parallels to one of the [Supreme Court's] previous *Bivens* cases, it can present a new context." *Abbasi*, 582 U.S. at 147. In other words, "even a modest extension is an extension." *Id.*; *see Mejia*, 61 F.4th at 669 ("[R]arely if ever is the Judiciary equally suited as Congress to extend *Bivens* even modestly.").

The Supreme Court's analysis in *Egbert* illustrates these principles. In *Egbert*, a bed-and-breakfast operator and Border Patrol confidential informant alleged, among other things, that a Border Patrol agent used excessive force on him while trying to conduct a search on the plaintiff's property. 142 S. Ct. at 1801. While noting that *Egbert* and *Bivens* involved "similar allegations of excessive force and thus arguably present[ed] 'almost parallel circumstances' or a similar 'mechanism of injury,'" the

10

Supreme Court stated that these "superficial similarities [were] not enough to support the judicial creation of a cause of action." *Id.* at 1805.

Here, although Norton's claims have some parallels to the claims in *Carlson*, the specifics of Norton's allegations are dissimilar in both their "nature and severity" from the facts in *Carlson*." *Martinez v. United States Bureau of Prisons*, Case No. 5:15-cv-02160-TJH (AFM), 2019 WL 5432052, at *9 (C.D. Cal. Aug. 20, 2019), *report and recommendation adopted*, 2019 WL 5424414 (C.D. Cal. Oct. 22, 2019), *aff'd*, 830 F. App'x 234 (9th Cir. 2020).

In *Carlson*, an inmate was diagnosed as a "chronic asthmatic" when he entered the federal prison system. *Green v. Carlson*, 581 F.2d 669, 671 (7th Cir. 1978), *aff'd*, 446 U.S. 14 (1980).  The inmate was later hospitalized for eight days because of the condition, and the treating physician recommended that the inmate be transferred to a different facility. *Id.*  Despite the doctor's recommendation, the inmate remained in the same facility. *Id.*  Then, when the inmate was admitted to the prison hospital with an asthmatic attack, he was not seen by a doctor for eight hours. *Id.*  As the inmate's breathing became more difficult, a non-licensed nurse in charge of the prison hospital deserted the inmate to distribute medication elsewhere. *Id.*  When the nurse returned, he attempted to use a respirator on the inmate. *Id.*  The nurse did this despite being told two weeks earlier that the respirator was broken. *Id.*  When the inmate told the nurse that the respirator was making his breathing worse, the nurse administered two

11

doses of a drug contraindicated for someone suffering an asthmatic attack. *Id.* A half-hour after the second injection, the inmate suffered a respiratory arrest. *Id.* The nurse and another prison official then brought emergency equipment to administer an electric jolt to the inmate, but neither man knew how to operate the machine. *Id.* Only at that point was the inmate taken to a hospital, where he was pronounced dead. *Id.*

Here, Norton's claims differ from those in *Carlson* in at least two important ways. First, the nature of Norton's claims differs from that of the claims in *Carlson* because Norton's claims do not relate to how Defendants provided medical treatment at FDC Honolulu. Instead, Norton alleges that Defendants delayed his visit to a neurologist and his access to medication. Although it is well settled that state prisoners can establish deliberate indifference in the context of an Eighth Amendment claim by showing that officials "delay . . . medical treatment," *Crowley v. Bannister*, 734 F.3d 967, 978 (9th Cir. 2013) (internal quotation marks and citations omitted), that was not the central basis for the claims in *Carlson*. Thus, Norton seeks an extension of *Bivens* to an area not focused on in *Carlson*. *See Donaldson v. Garland*, No. 2:21-cv-1178 TLN KJN P, 2022 WL 10189084, at *3 (E.D. Cal. Oct. 17, 2022) (finding new context where plaintiff alleged that prison officials interfered with medical care by cancelling surgery), *report and recommendation adopted*, 2022 WL 17722326 (E.D. Cal. Dec. 15, 2022).

Second, the severity of Norton's claims is nothing like the severity of the claims in *Carlson*. While the Court does not minimize the headaches and dizziness that Norton experienced, they are not analogous to the medical emergency faced by the inmate in *Carlson* that ultimately resulted in that inmate's death. *See Watanabe v. Derr*, CIVIL NO. 22-00168 JAO-RT, 2023 WL 2500933, at *5 (D. Haw. Mar. 10, 2023) (concluding that pain associated with fractured coccyx and bone chips presented a new context); *Washington v. Fed. Bureau of Prisons*, Civil Action No. 5:16-3913-BHH, 2022 WL 3701577, at *5 (D.S.C. Aug. 26, 2022) (noting that "[p]laintiff's *Bivens* claims do not involve a medical emergency, as did *Carlson*, but rather focus on a long term and ongoing course of medical treatment of Plaintiff's chronic, non-fatal condition" in concluding that case presented a new context); *Peguero v. Quay*, No. 1:22-cv-00057, 2023 WL 2410882, at *11 (M.D. Pa. Mar. 8, 2023) (concluding that chronic pain caused by two herniated discs, scoliosis, and nerve damage was a new context because it did not involve a "medical life-threatening emergency").

These differences in the "nature and severity" of Norton's claims compared to the claims in *Carlson* are meaningful. *See Martinez*, 2019 WL 5432052, at *9; *see also Prescott v. United States*, Case No. 2:20-cv-2740-SB (SK), 2022 WL 18859316, at *2 (C.D. Cal. Dec. 21, 2022) (concluding that assigning a federal prisoner to an inhospitable bed and refusing to move him even after a doctor's order was issued

presented a new context), *report and recommendation adopted*, 2023 WL 2188692 (C.D. Cal. Feb. 22, 2023); *Davis v. Fed. Bureau of Prisons*, Case No. 5:21-cv-1475-CAS (SK), 2022 WL 18460704, at *2 (C.D. Cal. Dec. 8, 2022), *report and recommendation adopted*, 2023 WL 405319 (C.D. Cal. Jan. 24, 2023) (concluding that a federal prisoner's claim that defendant performed an unauthorized surgical procedure presented a new context). Indeed, allowing Norton's claims to proceed risks "transforming [the court] into an *ad hoc* medical review board tasked with deciding, with little to no judicial guidance, which medical errors, if any, cross the threshold into constitutional injury."[7] *Washington*, 2022 WL 3701577, at *5.

Furthermore, the Supreme Court has stated that "the presence of potential special factors that previous *Bivens* cases did not consider" is a relevant consideration in deciding whether a case presents a new context. *See Abbasi*, 582 U.S. at 140; *see also Egbert*, 142 S. Ct. at 1803 ("[W]e have explained that a new context arises when there are 'potential special factors that previous *Bivens* cases did not consider.")  (citation omitted). As explained in the following section, special factors weigh

---

[7] Norton cites two cases in his Response. *See* ECF No. 41 at PageID.198; *see also Lewis v. Ives*, No. 3:18-cv-00184-MK, 2020 WL 2761024 (D. Or. Feb. 12, 2020), *report and recommendation adopted*, No. 3:18-cv-00184-MK, 2020 WL 2747397 (D. Or. May 27, 2020); *Kaahanui-Moniz v. Hendrix*, No. 3:22-cv-01490-CL (D. Or.). These cases are unhelpful, however, because they do not address the Supreme Court's statement in *Egbert* that "similar allegations," "'almost parallel circumstances,'" or a "similar 'mechanism of injury'" are only "superficial similarities," and they are "not enough to support the judicial creation of a cause of action." 142 S. Ct. at 1805. Nor does these cases address the Supreme Court's warning that "a plaintiff cannot justify a *Bivens* extension based on 'parallel circumstances with . . . Carlson* unless he also satisfies the 'analytic framework' prescribed by the last four decades of intervening case law." *Id.* at 1809.

14

against recognizing a *Bivens* remedy for Norton's claims, including the existence of the Federal Bureau of Prisons' administrative remedy program. Because this factor was not considered by the Court in *Carlson*, this is another reason that Norton's claims arise in a new context. *See Hoffman v. Preston*, No. 20-15396, 2022 WL 6685254, at *1 (9th Cir. Oct. 11, 2022) (unpublished) ("Congress has not authorized a damages remedy in this context, and there are 'rational reason[s],' why it might not, for example, the existence of the Bureau of Prisons' formal review process for inmate complaints.") (citation omitted and brackets in original).

For all these reasons, Norton's claims are meaningfully different from the claims in *Carlson*, and the Court must proceed to step two.

## C.   Special Factors Counsel Against Recognizing a *Bivens* Remedy

"[I]f a claim arises in a new context, a *Bivens* remedy is unavailable if there are 'special factors' indicating that the Judiciary is at least arguably less equipped than Congress to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Egbert*, 142 S. Ct. at 1798 (citation omitted). Thus, at step two, "[a] court faces only one question: whether there is *any* rational reason (even one) to think that *Congress* is better suited to 'weigh the costs and benefits of allowing a damages action to proceed.'" *Id.* at 1803 (citation omitted). "If there is even a single 'reason to pause before applying *Bivens* in a new context,' a court may not recognize a *Bivens* remedy." *Id.* (citation omitted). In conducting this analysis, courts must ask

15

"'broadly' if there is any reason to think that 'judicial intrusion' into a given field might be 'harmful' or 'inappropriate.'" *Id.* at 1805 (citation omitted). If there is such a reason "or even if there is the '*potential*' for such consequences, a court cannot afford a plaintiff a *Bivens* remedy." *Id.* at 1805–06 (citation omitted). This will be the outcome in "most every case." *Id*. at 1803.

For example, "[i]f there are alternative remedial structures in place, 'that alone,' like any special factor, is reason enough to 'limit the power of the Judiciary to infer a new *Bivens* cause of action.'" *Id.* at 1804. It does not matter whether a *Bivens* remedy would disrupt the remedial scheme, nor does it matter whether the court should provide a remedy for a wrong that would otherwise go unaddressed. *Id.* Likewise, "it does not matter that 'existing remedies do not provide complete relief.'" *Id.* (citation omitted). "So long as Congress or the Executive has created a remedial process that it finds sufficient to secure an adequate level of deterrence, the courts cannot second-guess that calibration by superimposing a *Bivens* remedy." *Id.* at 1807.

Here, the Court cannot recognize a *Bivens* remedy because alternative remedies are available to Norton. First, the Executive, through the Federal Bureau of Prisons, has an alternative remedial program for federal prisoners like Norton. *See* 28 C.F.R. § 542.10(a) ("The purpose of the Administrative Remedy Program is to allow an inmate to seek formal review of an issue relating to any aspect of his/her own

16

confinement."); *see also Malesko*, 534 U.S. at 74 (concluding that *Bivens* remedy was unavailable, in part, because "[i]nmates . . . have full access to remedial mechanisms established by the BOP, including . . . grievances filed through the BOP's Administrative Remedy Program"); *Hoffman*, 2022 WL 6685254, at *1 ("Congress has not authorized a damages remedy in this context, and there are 'rational reason[s],' why it might not, for example, the existence of the Bureau of Prisons' formal review process for inmate complaints.") (citation omitted and brackets in original).

Second, Congress provided an alternative remedy through the Federal Tort Claims Act ("FTCA"). *See Schwarz v. Meinberg*, 761 F. App'x 732, 734–35 (9th Cir. 2019) (identifying the FTCA as an alternative process available to federal prisoners); *Prescott*, 2022 WL 18859316, at *2 ("[A]ggrieved federal prisoners can bring suit for damages against the United States for the torts of its federal employees under the [FTCA]."); *Donaldson*, 2022 WL 10189084, at *3 ("[P]laintiff has alternative remedies available to him, including the Bureau of Prisons administrative grievance process and a federal tort claims action.").

As the Supreme Court has stated, "in all but the most unusual circumstances, prescribing a cause of action is a job for Congress, not the courts." *Id.* at 1800. This case does not present the unusual circumstances required to recognize a *Bivens*

remedy. Thus, Norton's claims for money damages against Dr. Kwon on Robl are DISMISSED.

**D.     Injunctive Relief**

In addition to seeking damages, Norton also seeks injunctive relief. *See* ECF No. 16 at PageID.97 (seeking an "Order from the Court to provide the Plaintiff with the medical treatment he requires without further delay").

In some circumstances, a plaintiff may file a non-*Bivens* action for injunctive relief to stop ongoing constitutional violations. *See Bacon v. Core Civic*, Case No. 2:20-cv-00914-JAD-VCF, 2020 WL 3100827, at *6 (D. Nev. June 10, 2020) (footnote omitted). For example, injunctive relief might be available where a plaintiff: (1) invokes jurisdiction under 28 U.S.C. § 1331; (2) alleges facts sufficient to state a colorable ongoing constitutional claim; (3) sues and identifies the person who would be responsible for carrying out any order for injunctive relief; and (4) requests particular injunctive relief that is specifically and narrowly targeted to resolving the ongoing violation. *See id.*

To the extent Norton seeks an order requiring Dr. Kwon and Robl to provide him with medical care at FDC Honolulu, however, those claims are moot because Norton was transferred from FDC Honolulu to FCI Sheridan. *See Dilley v. Gunn*, 64 F.3d 1365, 1367 (9th Cir. 1995) (concluding that case became moot upon plaintiff's transfer to another prison facility); *Nelson v. Heiss*, 271 F.3d 891, 897 (9th

Cir. 2001) ("[W]hen a prisoner is moved from a prison, his action will usually become moot as to conditions at that particular facility."). Norton has not demonstrated a reasonable expectation that he will be transferred back to FDC Honolulu and denied adequate medical care upon his arrival there. *Dilley*, 64 F.3d at 1369.

Thus, Norton's claims for injunctive relief are DISMISSED as moot. *See Marsala v. Diaz*, No. 22-16260, 2023 WL 2966045 (9th Cir. Apr. 17, 2023) (unpublished) (dismissing appeal as moot where prisoner was transferred to another prison); *Hydrick v. Wilson*, 711 F. App'x 813, 814 (9th Cir. 2017) ("Where plaintiffs seek to enjoin unlawful practices at a facility in which they are confined, transfer to a different facility typically moots their claims.").

## V. CONCLUSION

1. Because Norton's damages claims arise in a new context and special factors weigh against recognizing a new *Bivens* remedy, Defendants' Motion, ECF No. 37, is GRANTED for failure to state a claim upon which relief can be granted. Because amendment would be futile, these claims are DISMISSED without leave to amend. *See, e.g.*, *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1041 (9th Cir. 2011) (explaining that dismissal without leave to amend is proper when amendment would be futile).

2. Norton's claims for injunctive relief are DISMISSED as moot.

3.  The Clerk of Court is DIRECTED to enter judgment in favor of Defendants and close the case.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, April 21, 2023.



/s/ Leslie E. Kobayashi
Leslie E. Kobayashi
United States District Judge

**DANIEL EMERSON NORTON VS. DR. KWON, ET AL.; CV 22-00109 LEK-RT; ORDER GRANTING DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**